AETNA LIFE INS. CO. v. PLEASANT TP.

(Circuit Court, N. D. Ohio, W. D.   January 3, 1893.)

1. RAILROAD COMPANIES—MUNICIPAL AID—CONSTITUTIONAL LAW.
     Laws Ohio 1880, p. 157, which authorizes a certain township to construct a few miles of railroad within its limits, intended to ultimately form part of a continuous line of road to be operated and equipped by private capital, violates Const. Ohio, art. 8, § 6, which prohibits the general assembly from authorizing any county, city, town, or township to become a stockholder in any private corporation, or to raise money for or loan its credit in aid of such corporation; and bonds issued by a township for such a purpose are void. Pleasant Tp. v. Aetna Life Ins. Co., 11 Sup. Ct. Rep. 215, 138 U. S. 67, followed.

2. SAME—EVIDENCE.
     In a suit on such bonds the answer set up the above facts as proving their invalidity. A demurrer to the answer was sustained, but this decision was reversed by the supreme court on the ground that the act authorizing the issue was unconstitutional. Thereafter, in the trial court,

the demurrer was overruled pursuant to the mandate, and the plaintiff filed a reply. *Held*, that the defendant could offer evidence to prove the facts which had been deemed by the supreme court, on demurrer, sufficient to establish the unconstitutionality of the act.

At Law. Action by the Aetna Life Insurance Company against Pleasant township, Van Wert county, Ohio, on certain bonds issued for the construction of a railroad. A demurrer to the answer was sustained, but this judgment was reversed by the supreme court. 11 Sup. Ct. Rep. 215. The case is now on trial before the court, a jury being waived. Judgment for defendant.

James H. Sedgewick and Brown & Tyler, for plaintiff.

Doyle, Scott & Lewis and G. M. Saltzgaber, for defendant.

RICKS, District Judge. This case was heard at the December term, 1890, of this court, by the senior circuit judge, upon a demurrer to the defendant's answer and amendments thereto, which was sustained, and a judgment was thereupon entered in favor of the plaintiffs upon the coupons sued upon. From that judgment the defendant, by proceedings in error, carried the case to the supreme court, which reversed the judgment of this court, and remanded the case, with instructions to overrule the demurrer to the answer. 11 Sup. Ct. Rep. 215. In obedience to that mandate, the demurrer was overruled, and the plaintiff filed a reply to the answer and amended answer of the defendant, in which it alleges that the act of the general assembly of Ohio, under which the bonds in plaintiff's petition set forth were issued and sold, is constitutional; that the purpose and intent of said act was, as expressed therein, to enable said defendant, upon such a vote as prescribed, to construct a short line of railroad, with all proper appendages claimed by said defendant; that the amount authorized in said act was amply sufficient to construct and equip said railroad; that said act is, upon its face, constitutional; that the same has never been declared unconstitutional by any court of said state; that a similar statute has been declared constitutional; that the plaintiff, neither before nor at the time it purchased said bonds, had any knowledge whatever of any of the facts, if facts they be, in the answers alleged, but that it purchased said bonds before the same or any interest thereon was due, for a valuable consideration. Upon the issue so joined, a stipulation in writing was filed, the parties waiving their right to a trial to a jury, and submitting the issues of fact and law to the court. Testimony was offered, and argument of counsel was heard, at the present December term of court.

The only question necessary and proper now to be considered is whether the issues of fact made, and the testimony submitted thereon, make this case, as now presented, distinguishable from that before the supreme court when the bonds sued upon were declared invalid, and the act authorizing them unconstitutional. The provision of the constitution of Ohio under consideration is article 8, § 6, which says:

"The general assembly shall never authorize any county, city, town, or township, by vote of its citizens, or otherwise, to become a stockholder in any joint-

stock company. corporation, or association whatever, or to raise money for, or loan its credit to or in aid of, any such company, corporation, or association."

This prohibition effectually accomplished its purpose, and entirely suppressed all public aid to railroad enterprises in Ohio until May, 1869, when the act of that date, general in its terms, but special in its application, authorized the city of Cincinnati to issue bonds, and out of the proceeds thereof construct a railway which should have one of its termini in that city. This act was held to be constitutional because it obviated the evils of a joint venture with, or a loan of credit to, any other association, company, or corporation in a railway enterprise, and provided a complete railroad to be owned by the city. It did not contemplate the mingling of public and private funds in a completed road. In the judgment of the supreme court of Ohio that act did not involve the city of Cincinnati in any of the evils intended to be prohibited by the constitutional provision cited, and therefore its validity was affirmed. Many acts have been passed by the legislature of Ohio since 1869, modeled after the Cincinnati act, but all have been declared unconstitutional for various reasons, chiefly because none of them conferred authority upon a municipality, conditioned and situated as Cincinnati was, to entirely construct and own a completed railroad, ready to be leased or operated upon terms which did not involve the municipality as stockholder, partner, or creditor. So when the act of 1880, under which the bonds in this case were issued, was passed, it was modeled after the act of May, 1869, and the question presented was whether it was constitutional. The learned circuit judge, in his opinion, heretofore referred to, proceeded at once to a consideration of that question, and reached the conclusion that this act was "in all essential particulars identical with that of May 4, 1869." He said: "I am wholly unable to distinguish any material or substantial difference between the two acts." He found that, "so far as anything appears upon the face of the act itself, the railway which the township was thus authorized to build, by the use of its credit to the extent of $40,000, was to be an independent line or highway owned by the township, and in no way connected with any other line, company, corporation, or association whatever." Having found this act identical with the act of 1869, and that the subsequent decisions of the supreme court of Ohio as to the acts of 1872 and 1880 declaring them unconstitutional were made after the bonds in this suit were issued and acquired by plaintiff, he felt justified in following the earlier decision of the court upon the act of 1869, and in giving the plaintiff the benefit of invoking that decision as the law of the state when it purchased the bonds in controversy, rather than to allow the defendant to claim exemption from liability under the subsequent decisions in 37 and 38 Ohio State. Wyscaver v. Atkinson, 37 Ohio St. 80; Counterman v. Dublin Tp., 38 Ohio St. 515.

But the supreme court of the United States put a different construction upon the act of 1880 authorizing the bonds in this suit to be issued. It looked beyond the face of that act itself, and found, from the volume of Ohio Laws containing this act, that at the same

session several acts were passed authorizing several townships to build railroads, which, though general in form, were special in fact; that these contemporaneous acts necessarily applied immediately to townships north or south of the defendant township, and so situated as to include only those on the continuous line of a railroad already projected and surveyed. In construing the constitutionality of a statute the court says its scope and effect are as proper for consideration as its language, and that the eyes of the court are never limited to its mere letter; and so it concluded that the supreme court of Ohio, in construing the acts of 1872 and of 1880, found that "obviously," under all those contemporaneous statutes, what was contemplated was a limited distance of track, whose value could only be secured by mingling the funds of the township with other capital, and that the significance of those acts was the securing of the right of way and the grading of the roadbed through those several townships, with the view of thereafter placing this thus created, continuous line in the possession of some corporation which would equip and operate it.   The supreme court of the United States further distinguished this case from the Cincinnati case by observing that the act of 1869 conferred upon "a municipal corporation proper," authority to do the things in that act designated, whereas the act of 1880, now under consideration, was a grant to a township, which is a "quasi corporation," so that a delegation of power to one, if adjudged valid, does not justify the inference that a delegation of a like power to the other must also be valid.   That court therefore decided, from an inspection of the several acts of the Ohio legislature referred to in its opinion, and from certain facts of which it took judicial notice, and from other facts admitted by the demurrer interposed, that the law under which the bonds now sued upon by plaintiff were issued was unconstitutional.

But plaintiff contends that the case, as now presented by the additional pleadings filed and the testimony offered, is quite different from the case as presented by the demurrer to the answer, upon which the supreme court based its opinion, to which reference has already been made.   It is therefore important to ascertain whether such distinction exists.   Upon what facts did the supreme court base its decision?   The main facts accepted as established are such as appear either upon the face of the act of 1880 authorizing these bonds, or of the other acts contemporaneous therewith, and of which that court took judicial notice, or such facts as were assumed from the geographical position of the several townships referred to in those acts.   From these sources the court found or assumed the material facts upon which its opinion is based.   These facts, briefly stated, were that the corporation to which the power to issue bonds in aid of a railroad was given under this act of 1880 was a township, which was a quasi corporation; that the defendant township in this case was authorized to build, or aid in building, but a limited distance of track, whose value could only be secured by mingling the funds of the township with other capital; that a private corporation had projected and surveyed a line of road running through several townships, in contemplation of placing this thus created, continuous

line in the possession of some corporation which would equip and operate it; that this combination of statutes, with their several grants of township aid, clearly disclosed that there was no expectation that either of the townships could build, equip, and own an independent railroad; that each separate act meant for its township, not a railroad, but a roadbed; that the only real, resulting benefit was in incorporating this roadbed into the railroad projected by, and to be practically operated and made effective only through, private capital; that this concurrence of separate township aid by legislative sanction establishes an intent to further the projected line through public aid, not the building and ownership of a railroad, but aid to a projected and lengthy line of railroad; that the amount of the aid to be voted was insufficient for the construction and equipment of a road of even short length; and that the act under consideration locates neither the road nor its termini. From all these facts the court concludes:

"An act containing such indefinite provisions, with an appropriation of township aid so limited as to foreclose the idea of a constructed and equipped railroad, and whose thought of mingling public aid with private capital is so evidenced, * * * cannot be sustained, in the face of the inhibition of the constitution of the state of Ohio."

If these same facts are again made to appear to the court by evidence offered on the trial of the case, must not the same result follow? The supreme court, upon the facts I have recapitulated, held the act before it unconstitutional, and the bonds issued thereunder invalid. Did it not thereby, in effect, say those facts were competent and relevant to be considered in passing upon the validity of such an act? And when that court held such facts sufficient as the basis for such an opinion, did it not, in effect, say that the same facts, when again offered as evidence, under issues properly pleaded, would be again held competent and relevant, and sufficient to sustain a like opinion? It seems to me that there can be but one answer to such propositions. The court, on the trial of this case, permitted the defendant to offer evidence to establish the facts deemed by the supreme court competent and sufficient in the case then before it. The plaintiff objected to this evidence, and now insists that it is not competent or relevant, and not proper matter in defense in this suit. For the reasons already suggested, I am of the opinion that, the supreme court having considered such evidence in defense good and sufficient when admitted by demurrer, it in effect held that the same facts would be competent evidence to offer in a similar case, and, when properly presented in a case involving the same statute, it would hold it a good and sufficient defense to a suit upon bonds issued thereunder.

The evidence in the case, as it now stands upon the pleadings, establishes all the facts found or assumed by the supreme court in the opinion heretofore considered. From this evidence I find that the bonds whose coupons are sued upon were issued by the defendant township, a quasi corporation, in aid of an uncompleted railroad, which could not be used as an independent line, so to be operated or leased by the township, and that the project, because of the amount

expended and the extent of the road constructed, was obviously a mingling of public aid with private capital, and a loan of the credit and money of the township to a joint-stock company. These facts were so apparent from the face of the particular statute now involved, and when taken in connection with the limited aid voted, and the obvious identification of this project with others closely allied to it, was such an evidence of a joint venture of public aid with private enterprise and credit, that it should have been notice to the purchasers of said bonds to put them upon closer inquiry as to their validity. The township has received the proceeds of these bonds, and is now enjoying the benefits of its railroad facilities, and this court is not at all in sympathy with the defense interposed. If I could do so I would enforce the payment of the principal and interest of the bonds when matured, but, for the reasons stated, it seems to me the decision of the supreme court applies to the case now made upon the pleadings and evidence, and that a judgment for the defendant upon a finding of facts to be prepared substantially as above stated must be allowed.